UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

MARY ANNE LAIRD,                                                    PLAINTIFF

v.                              CIVIL ACTION NO. 3:08-CV-500-S

NORTON HEALTHCARE, INC.,
HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY, and
HARTFORD–COMPREHENSIVE EMPLOYEE BENEFITS
SERVICES COMPANY,                              DEFENDANTS

**MEMORANDUM OPINION**

This case is before the Court on the defendants' motions (respectively) "to dismiss" and "for judgment." The Court places those denotations in quotation marks because the defendants have been coy about the nature of their motions: None of them cites a particular Federal Rule as the basis for its motion. We suppose they intend to invoke Rules 12(b) and (c), but both sides of the case have now submitted evidence outside the pleadings. Rule 12(d) therefore directs us to treat the motions as being for summary judgment, which we will grant for the reasons that follow.

**I.**

Mary Anne Laird claims that she is owed benefits under disability insurance policies governed by the Employee Retirement Income Security Act of 1974 (ERISA). Specifically, she seeks payment of short-term benefits from Norton Healthcare and Hartford–Comprehensive Employee Benefits Services Company ("CEBSCO"), and payment of long-term benefits from Hartford Life and Accident Insurance Company ("Hartford Life"). Laird was formerly employed by Norton, but left work in 2003 after a series of injuries left her disabled. The first of these was a neck injury that occurred on or about July 3, 2003, as to which CEBSCO denied short-term disability benefits because the injury was work-related. Laird now concedes this denial was

appropriate. After a series of strokes left her unable to work after November 26, 2003, she filed for short-term benefits again, only to have CEBSCO deny them on the ground that she was not totally disabled. CEBSCO sent the second denial letter on April 20, 2004.

Norton and CEBSCO claim that Laird did not appeal the denial of short-term benefits within the 180-day period prescribed by her policy, and therefore argue that Laird has failed to exhaust her administrative remedies and cannot sue in this court. Similarly, Hartford life argues (*inter alia*) that Laird failed to exhaust the administrative process with respect to her long-term benefits claim because she did not file her initial application until well after the deadline for doing so.

A party moving for summary judgment has the burden of showing that there are no genuine issues of material fact and that the movant is therefore entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151-60, 90 S. Ct. 1598, 16 L. Ed. 2d 142 (1970); *Felix v. Young*, 536 F.2d 1126, 1134 (6th Cir. 1976). Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2510 (1986). The dispute must also be genuine. The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party. *Id.* The disputed issue need not be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968). The evidence must be construed in the light most favorable to the party opposing the motion. *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425 (6th Cir. 1962).

**II.**

CEBSCO and Norton argue that Laird failed to timely appeal the adverse short-term benefits decision, that she has thereby failed to exhaust her administrative remedies, and that this provides them an affirmative defense to Laird's suit. "Although ERISA is silent as to whether exhaustion of administrative remedies is a prerequisite to bringing a civil action," the Sixth Circuit has nonetheless held that "the administrative scheme of ERISA requires a participant to exhaust his or her administrative remedies prior to commencing suit in federal court."[1] *Coomer v. Bethesda Hosp., Inc.*, 370 F.3d 499, 504 (6th Cir. 2004); *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir. 1991). The exhaustion requirement "enables plan fiduciaries to efficiently manage their funds; correct their errors; interpret plan provisions; and assemble a factual record which will assist a court in reviewing the fiduciaries' actions." *Ravencraft v. UNUM Life Ins. Co. of Am.*, 212 F.3d 341, 343 (6th Cir. 2000) (*quoting Makar v. Health Care Corp.*, 872 F.2d 80, 83 (4th Cir. 1989)). In order to exhaust the administrative process, a plaintiff must pursue whatever appeal mechanisms are available. Laird's short-term disability plan required submission of a written appeal within 180 days of the denial of the claim. Failure to exercise this appeal right in a timely fashion results in it being impossible to exercise it at all, preventing a plaintiff from ever exhausting the administrative process and thus barring the door to the courthouse.

Laird claims to have sent CEBSCO an appeal letter on or about July 2, 2004. Defendants respond that they in fact never received that letter, and that they heard nothing from Laird regarding her appeal until July 2006, more than two years after CEBSCO denied her benefits request. To

---

[1] The exhaustion requirement can be circumvented if the plaintiff can show that it would have been futile, *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 419 (6th Cir. 1998), but Laird makes no futility argument at this juncture.

resolve this conflict, Laird relies on the common-law mailbox rule: "proper and timely mailing of a document raises a rebuttable presumption that it is received by the addressee." *Anderson v. United States*, 966 F.2d 487, 491 (9th Cir. 1992) (*citing Rosenthal v. Walker*, 111 U.S. 185, 193-194 (1884) ("The rule is well settled that if a letter properly directed is proved to have been either put into the post office or delivered to the postman, it is presumed, from the known course of business in the post office department, that it reached its destination at the regular time, and was received by the person to whom it was addressed.")). Although the defense seeks to distinguish ERISA appeals from other contexts in which this rule has been applied, we see no need to reach that argument. Assuming *arguendo* that the rule applies to this case, the presumption on which the plaintiff relies never arises unless she proves that she mailed the letter in time. This presumption is not invoked lightly; it requires proof of mailing, such as an independent proof of a postmark, a dated receipt, or other evidence of mailing apart from a party's own self-serving testimony. *See Sorrentino v. IRS*, 383 F.3d 1187, 1191, 1195 (10th Cir. 2004); *Rios v. Mansfield*, 21 Vet. App. 481, 483 (2007) (collecting cases). The plaintiff in *Anderson*, for instance, buttressed her own testimony with the affidavit of a friend who had accompanied her to the post office when she mailed the parcel in question. *Anderson*, 966 F.2d at 489. The court therefore permitted her to rely on the presumption.

Laird lacks any such third-party evidence. The sum total of her "proof" that she mailed the appeal letter on time is the following paragraph from her own affidavit:

> Later that same day, (July 2, 2004), I retyped the draft letter and added the correct address of Hartford-CEBSCO of 3800 American Blvd. West, Bloomington MN 55431. This letter was appended to the Complaint as Plaintiff's Exhibit "B" and was mailed to the address shown thereon.

(Laird Aff. ¶4.) Even if we did not require extrinsic proof, this would be too ambiguous to stand as proof of such an important fact. It says that the plaintiff typed the letter on July 2, but not that she

mailed it then—only that it "was mailed" on some unspecified date. Further, the second sentence is so ambiguous as to confuse the reader as to whether the letter "was mailed" to the Bloomington address or to some address listed on the Complaint. (A literal reading indicates the latter, but common sense points to the former.) More importantly, however, the affidavit is unsupported by any evidence extrinsic to the plaintiff. There is no testimony of a witness who saw her address, stamp, or mail the letter, and no certified mail receipt. Laird did not even bother to follow up with Norton or CEBSCO until more than two years had passed, although she had heard nothing regarding her appeal.

In the absence of any outside evidence, Laird's affidavit is insufficient to raise a genuine question as to whether she mailed the letter in a timely fashion. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Laird cannot claim that she had inadequate time for discovery, as she is the only person with knowledge of all the facts necessary to prove she mailed the letter. This lawsuit had been brewing for more than two years before Laird filed it, and sat in this court for six months before she filed her response brief (to which she attached her affidavit). There was ample time to obtain additional affidavits and/or documentary evidence, and the plaintiff failed to avail herself of that opportunity. Consequently, we conclude that for purposes of this lawsuit she never filed her appeal letter and that she therefore never exhausted her administrative remedies. We will accordingly grant summary judgment to the defense.

**III.**

Hartford Life defends on the ground that Laird did not file completed proof-of-loss paperwork on time. Laird's long-term disability policy stipulated that benefits would not become payable until she had been disabled for 180 days.[2] It further required that proof of loss be filed within 90 days after the start of the period for which benefits were payable (i.e. within 270 days of the onset of disability). An exception in the rules allowed for a one-year extension of time if it was not possible to provide proof within the normal time period. Laird sent her application for long-term benefits via certified mail on April 26, 2008; the application was delivered on April 29, 2008. As noted above, the date of the onset of her present disability appears to have been November 26, 2003. Laird asks us to push the relevant date back to April 19, 2004, apparently because that was the day before CEBSCO sent its letter denying short-term benefits because she was not totally disabled. It seems unlikely that this is the right date: the Elimination Period counts "the first 180 consecutive days of any one period of disability," which appears to indicate that it starts as soon as the injury occurs, irrespective of any outside decisions or events. But no matter. Assuming *arguendo* that we should count from the April 2004 date, the 270-day period would have concluded on January 14, 2005. Had it not been possible for her to file her proof of loss by that time, she would have had an additional year, leaving her until January 14, 2006. So even using the most favorable dates, Laird did not file her proof of loss until more than two years after the latest possible deadline. This would bar her proceeding in the administrative forum, thus simultaneously preventing her from exhausting that remedy and from pursuing her case in this court.

---

[2] This 180-day window is called the "Elimination Period."

Apparently conceding all of this, Laird counters by arguing that filing her long-term benefits claim and exhausting her administrative remedies would have been futile, because CEBSCO's denial of her short-term disability claim implied that Hartford Life would surely deny her application regardless of when she filed it. "Although ERISA's administrative exhaustion requirement . . . is applied as a matter of judicial discretion, a court is obliged to exercise its discretion to excuse nonexhaustion where resorting to the plan's administrative procedure would simply be futile or the remedy inadequate." *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 419 (6th Cir. Ohio 1998) (*citing*, *e.g.*, *Costantino v. TRW Inc.*, 13 F.3d 969 (6th Cir. 1994)). "The standard for adjudging the futility of resorting to the administrative remedies provided by a plan is whether a clear and positive indication of futility can be made. A plaintiff must show that it is certain that his claim will be denied on appeal, not merely that he doubts that an appeal will result in a different decision." *Id.* (citations and internal quotation marks omitted). "The futility exception is . . . quite restricted and has been applied only when resort to administrative remedies is clearly useless." *Communications Workers of Am. v. AT&T*, 40 F.3d 426 (D.C. Cir. 1994) (citations and internal quotation marks omitted). The courts of the Sixth Circuit have applied the futility doctrine in two contexts: (1) where the "Plaintiffs' suit [is] directed to the legality of [the plan], not to a mere interpretation of it,", and (2) where the defendant "lacks the authority to institute the [decision] sought by Plaintiffs." *Dozier v. Sun Life Assur. Co. of Can.*, 466 F.3d 532, 535 (6th Cir. 2006) (*quoting Costantino*, 13 F.3d at 975; *Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 719 (6th Cir. 2005)).

To begin, we note that this case fits neither of the rubrics under which the futility exception is typically applied. With respect to the first, Laird does not challenge her plan's legality. Rather, she argues that her benefits plans have been misinterpreted, in that she was in fact completely

disabled within the plans' meanings and should have received benefits. As to the second, Hartford Life is not barred by any law or contractual arrangement external to its relationship with Laird from finding her eligible for benefits. The fact that Laird's claims are not analogous to other futility cases cuts against her position.

Bearing in mind this fact as well as the limited nature of the futility exception, it is the Court's view that the available administrative avenues for relief were not so obviously dead ends that they were not worth pursuing *at all* for *several years*. CEBSCO and Hartford life are separate entities with different employees in charge of making coverage decisions. Laird makes no attempt to argue that her disabilities actually fit within her long-term disability plan's coverage, but we suppose that she thinks they do. (If not, this suit would be pointless.) That being the case, she might have thought that another observer in a different company would agree with her assessment.

In a bid to avoid this conclusion, Laird states in her affidavit (at ¶ 9) that she "was told by Kim Satterly[,] who was the benefit coordinator of Norton Suburban in January 2004[,] that there was no sense filing a long term disability claim since I could not qualify until I had been approved for short term disability. Relying on this information, I did not file my claim within the time period." She argues, in effect, that Satterly's words (offered only as hearsay in Laird's own affidavit) should equitably estop Hartford life from denying that any claim filed by Laird would have been rejected. In an ERISA case, equitable estoppel requires proof of five elements:

> (1) There must be conduct or language amounting to a representation of material fact; (2) the party to be estopped must be aware of the true facts; (3) the party to be estopped must intend that the representation be acted on, or the party asserting the estoppel must reasonably believe that the party to be estopped so intends; (4) the party asserting the estoppel must be unaware of the true facts; and (5) the party asserting the estoppel must reasonably or justifiably rely on the representation to his detriment.

*Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 456 (6th Cir. 2003) (*quoting Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 403 (6th Cir.) (en banc), *cert. denied*, 524 U.S. 923 (1998)). Laird cannot fulfill these requirements. Even taking her unsupported affidavit as true, there is no evidence that Hartford Life made any representation on which she could have relied: the statement came from a Norton employee. Further, nothing suggests that Hartford Life directed Satterly to make the statement or intended that anyone rely on it. It was Laird's responsibility to follow up and assert her rights within the plan's window, and she has not shown either that to do so would have been futile or that Hartford Life induced her to act as if that were the case.

Laird failed to exhaust the available administrative process by failing to apply for long-term disability benefits anywhere close to the deadline for doing so. Accordingly, summary judgment against her is in order.[3]

The court will enter a separate Order in accordance with this Opinion.

**Charles R. Simpson III, Judge**
**United States District Court**

---

[3] Hartford Life also argues that Laird failed to file this lawsuit within the three-year period specified by the long-term benefits plan, but we see no need to reach the merits of this defense.

- 9 -

January 29, 2010